678 F.2d 751
 30 Fair Empl.Prac.Cas. 477,
29 Empl. Prac. Dec. P 32,698
Miguel G. RAMIREZ, Appellant,
v.
The CITY OF OMAHA, a Municipal Corporation; Al Veys, Mayor;
Larry L. Wewel, Personnel Director; Vernon Van Scoy, Jr.,
Fire Chief; and Robert Thorsen, Police Officer, individually
and in their official capacities; Richard Roth, Public
Safety Director, Appellees.
Larry G. LEEDS, Appellant,
v.
The CITY OF OMAHA, a Municipal Corporation; Vernon Van Scoy,
Jr., Fire Chief; individually and in their official
capacities; Larry Wewel, former Personnel Director; William
McDonnell, Public Safety Director; Robert Thorsen, Police
Officer, Appellees.
 No. 81-2185.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 23, 1982.
Decided May 20, 1982.
 
 Clyde A. Christian, Omaha, Neb., for appellants.
 Thomas O. Mumgaard, Asst. City Atty., James E. Fellows, Deputy City Atty., Omaha, Neb., for appellees.
 Before LAY, Chief Judge, and BRIGHT and ROSS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs brought this Title VII suit against the City of Omaha and certain city officials alleging that defendants discriminated against plaintiffs on the basis of national origin. Plaintiffs alleged that the use of admissions obtained during a polygraph test which was used as a preemployment screening device disparately impacted on Mexican-Americans in violation of 42 U.S.C. §§ 1981, 1983 and 2000e et seq. The district court[1] held that plaintiffs failed to establish a prima facie case of adverse impact and dismissed the complaint. We affirm.
 
 
 2
 The facts of this case are essentially uncontroverted and are set out in the district court's memorandum dated May 19, 1981. Ramirez applied for a job as firefighter with the City of Omaha on August 17, 1976; Leeds applied for the position on August 23, 1976. All applicants were required to take both written and physical examinations and to submit to a personal interview. Applicants were then ranked according to test score and were placed on an "eligible list." Ramirez ranked number 14 and Leeds ranked number 262 on the list. Four groups of firefighters were hired from this list; they were hired on July 16, 1977, July 17, 1978, October 15, 1978, and October 23, 1978.
 
 
 3
 When positions were available in the fire department, applicants were referred in numerical order from the eligible list.[2] When a referral was made, the applicant was required to submit to a polygraph test, a medical examination, a psychiatric examination and a heart and lung stress test. Plaintiffs were rejected by the city on the basis of their polygraph examinations.
 
 
 4
 The polygraph report submitted to Fire Chief Van Scoy regarding Ramirez stated that Ramirez was convicted of assault and battery in October 1976, and that Ramirez admitted having recently been in a barroom fight. Leeds' polygraph report stated that Leeds admitted having stolen money and equipment from previous employers, although he was never arrested for these acts.
 
 
 5
 On appeal plaintiffs argue that the trial court erred in holding that the Fire Division's use of the admissions made during the polygraph did not disparately impact on Mexican-Americans. We agree with the district court that plaintiffs failed to make a prima facie showing of disparate impact.
 
 
 6
 The test applied by the district court in determining whether plaintiffs made a prima facie showing of discrimination was whether the hiring process in question selects "applicants for hire * * * in a racial pattern significantly different from that of the pool of applicants." Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). The trial court held that the appropriate applicant pool was the eligible list. Although five Mexican-Americans were hired after the filing of this lawsuit, the district court found that they were not hired by the city in response to this suit and thus should be included in the analysis of disparate impact.[3]
 
 
 7
 Polygraph reports were not introduced at trial regarding white applicants or the five after-hired Mexican-Americans. However, plaintiffs' counsel conceded at oral argument that the polygraph reports of the five Mexican-Americans were more favorable than those of Ramirez and Leeds. We hold that the finding that the city hired the five Mexican-Americans in good faith was not clearly erroneous. Fed.R.Civ.P. 52(a).
 
 
 8
 The district court held that the hiring process taken as a whole did not discriminate against Mexican-Americans. See Rule v. Intern. Ass'n of Bridge, Etc., Workers, 568 F.2d 558, 565 n.10 (8th Cir. 1977) (as modified on denial of rehearing) (1978). The ruling of Judge Denney was based on statistical evidence introduced in the trial court which showed that a higher percentage of Mexican-Americans were hired than whites. Of the 138 white males referred 40.5% (56) were hired. Of the 13 Mexican-American males referred 46.2% (6) were hired. Additionally, we note that rejection of plaintiffs was based on admissions made during the polygraph and not on an indication by the polygraph that plaintiffs gave deceptive answers.[4] We affirm the district court's finding that plaintiffs failed to make a prima facie showing of disparate impact.
 
 
 
 [1]
 The Honorable Robert V. Denney, United States District Judge for the District of Nebraska
 
 
 [2]
 For each request from the Fire Division, names equal to twice the number of vacancies were referred. Forty percent of all referrals were minorities
 
 
 [3]
 As the district court correctly stated, the general rule is that "the most probative cutoff dates for determining hiring statistics are the date of rejection and the date that an administrative or judicial employment discrimination claim is filed." Ramirez v. The City of Omaha, 538 F.Supp. 7, at 21 (D.Neb.1981) (citing Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 425 (8th Cir. 1970)). However, the court held that in the present case the most probative evidence of the applicant pool is the eligible list. We agree with the district court's interpretation of the "pool of applicants" test set out in Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975)
 
 
 [4]
 Pursuant to Neb.Rev.Stat. § 81-1932 (1980) the Omaha Fire Division has curtailed its use of the polygraph examination as a preemployment screening device