Velma SMITH, Plaintiff,

v.

AMERICAN SERVICE COMPANY OF ATLANTA, INC., Defendant.

Civ. A. No. C82–428A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 7, 1984.

David Sweat, Martha Pearson, Athens, Ga., for plaintiff.

Harry Bassler, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

HORACE T. WARD, District Judge.

This is a race discrimination action founded on 42 U.S.C. § 2000 *et seq.* (Title VII of the 1964 Civil Rights Act) and on 42 U.S.C. § 1981. Plaintiff alleges that she was an applicant for the position of receptionist at the defendant's Weems Road facility in Tucker, Georgia. She claims that her non-selection was the result of racial discrimination.

Plaintiff advances two theories of recovery. First, plaintiff claims that her non-selection was the result of the use of a discriminatory selection device which, although neutral on its face, has an adverse impact on black persons.

Secondly, plaintiff contends that she was the victim of disparate treatment in that a white applicant of lesser or equal qualifications was selected instead of her and that racial discrimination was a substantial motivating factor in plaintiff's non-selection.

The matter came before this court for trial on the merits on February 13, 1984. The following constitutes the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff Velma Smith is a black female citizen of the United States, and a resident of Dougherty County, Georgia. Defendant American Service Company of Atlanta, Inc. (hereinafter "ASCA") is a corporation authorized to transact business in the state of Georgia with a principal place of business located at 2006 Weems Road, Tucker, Georgia. ASCA is an employer engaged in business affecting commerce. Plaintiff moved from Albany to Atlanta seeking employment.

Around May of 1980, plaintiff was employed by a temporary service, Tempo Temps. As a part of her employment duties, she was assigned to the defendant ASCA as a receptionist. She performed in this capacity for a period of approximately two and one-half months. During this time, her performance was satisfactory. There was some testimony about minor complaints regarding plaintiff's handling of phone calls, but the court does not find any significant evidence of less than adequate job performance by plaintiff.

ASCA decided to fill the temporary position of receptionist with a permanent employee on or about October, 1980. Plaintiff was invited to submit an application, which she did on October 23, 1980. In early November plaintiff learned that the company was advertising in the Atlanta newspaper for applicants for the receptionist job. Approximately fourteen individuals responded to the ad in early November, each of whom filled out an application form given to them by plaintiff. Each applicant was then interviewed by the executive secretary, Betty Roistacher, who referred three of the most qualified applicants to the company's President, Everett Thomas, for a second interview.

Plaintiff's application was handled differently. She was interviewed only by Larry Wallace, Vice President of the company. Mr. Wallace did not interview the other applicants. Defendant explains this difference in procedure by stating that the company was familiar with Smith's job performance and saw no need to screen her. The reason given for the president not interviewing her was that he did not feel he could be objective after working with plaintiff.

Plaintiff and one white female, Jackie Ray, were selected as the two most qualified candidates, and were referred to Staples and Associates, an independent company, for a preemployment polygraph examination. At least partly on the basis of this polygraph examination the white female was selected over plaintiff. The polygraph examination is required by ASCA for all employees because of their concern about employees' trustworthiness. Each employ-

ee is given a key to the place of business; many employees work inside people's homes. (ASCA provides heating and air conditioning service.)

In early November, 1980 Tempo Temps was notified that defendant would not need Velma Smith's services as of November 14, 1980. On December 15, 1980, Smith filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). On October 7, 1981 the EEOC issued its determination, in which it found that there was reasonable cause to believe the charge was true. The EEOC issued to Smith a Notice of Right to Sue on December 10, 1981. Smith filed this action against ASCA on March 2, 1982.

The record is not as complete as the court would like for it to be as to what transpired with the plaintiff after she ceased working for the defendant on November 14, 1980. Shortly thereafter the plaintiff returned to Albany, Georgia, testifying that this was due to her inability to find suitable employment in the Atlanta area. She further testified that she filed for employment compensation and was out of work until sometime in 1982. It further appears from the evidence that the plaintiff became interested in cosmetology at a point in time in 1981, enrolled in a course of study for that line of work and was licensed as a cosmetologist in December, 1982. Evidence further revealed that she later worked in this vocation. At the trial, the plaintiff testified that she had been unemployed since November, 1983 due to injuries sustained in an automobile accident. Plaintiff further testified that the acts, conduct and behavior of defendant in failing to hire her have caused her emotional stress and mental anguish.

Plaintiff's case is based upon two theories: 1) that the use of the polygraph examination, and specifically the inquiry into applicant's arrest record, has an *adverse impact* on minorities and 2) that plaintiff was the most qualified applicant for the job and that the failure to hire her was due to *disparate treatment.*

*Adverse Impact*

Plaintiff's adverse impact claim is based on the selection procedures used by the company. The polygraphs in this case were conducted by Staples & Associates. The "Confidential Report of Polygraph Examination" provided by Staples & Associates gives the employer information on twelve areas and provides a recommendation as to whether or not the applicant should be hired. Of the twelve items, six of the items, marital status, physical and mental health, military history, education, driving record, and employment history are items which are inquired about on the defendant's employment application form.

Additionally, the confidential polygraph report inquires into areas which are not on the defendant's employment application: arrest record, use of drugs, drinking and gambling habits, indebtedness, undetected crimes, and thefts from former employers. The defendant routinely inquires into an applicant's alcohol and drug use prior to the polygraph examination.

It is the inquiry into arrest records that plaintiff claims has an adverse impact on black persons, generally, and which she claims specifically impacted upon her non-selection for the vacancy at issue.

It is uncontroverted that the defendant utilized the information obtained from the polygraph examination given by Staples & Associates in making hiring decisions. In the case of plaintiff, she and a white female were referred to Staples & Associates for a polygraph examination as the last step prior to selection by the defendant. The evidence concerning these polygraph examinations reveals that the successful white applicant showed deception on the polygraph with regard to use of drugs. Plaintiff was found by the polygraph examiner to have been deceptive with regard to her arrest record and thefts from former employers.

Defendant now asserts that the failure to hire plaintiff was based upon several factors, only one of which was the polygraph test (e.g., her job record, instability and financial problems). With regard to

the polygraph results, defendant claims its reservations about plaintiff were due to the evidence of deception, not the fact that she had an arrest record. This assertion carries little weight in view of the fact that Jackie Ray, the white applicant selected for the position, also exhibited signs of deception on her polygraph. Defendant distinguishes between the types of deception. Testimony was presented to show that the examiner considered Ms. Ray's deception to have been sufficiently explained in her post-test interview. There is no evidence that plaintiff was ever given a similar opportunity.

The defendant's statement of the reasons for not hiring plaintiff are unclear. Several different explanations have been offered at different times. Plaintiff testified that she was told the reason she was not hired was that the white female had greater accounting abilities than did plaintiff. This reason is not borne out by the record. The representative of the defendant in the proceedings before EEOC, attorney Gregory Sturgeon, stated that the defendant wished to withdraw that reason.

The defendant made numerous statements to the EEOC that the reason plaintiff was not hired was because of the results of the polygraph examination. In response to the determination of the EEOC issued on October 7, 1981 counsel for defendant stated:

> She was fairly considered for the position and denied an employment opportunity because of possible deception in a polygraph examination concerning thefts of money and merchandise from former employers.

(Plaintiff's Exhibit 7).

After vacillating previously about the reasons for not hiring plaintiff the company settled upon this reason, denying any reliance on the polygraph results concerning arrest record. It is clear that counsel understood that reliance on the arrest record could constitute a violation of Title VII. The evidence does not show that the arrest record was relied upon as a factor in the decision not to hire plaintiff.

*Disparate Treatment*

The evidence shows that plaintiff was treated differently during the selection process. As discussed previously, she was not screened by Ms. Roistacher, and was interviewed by the vice president rather than the president of the company. None of the plaintiff's references were checked. These facts are not necessarily indicative of discrimination in view of plaintiff's prior experience with ASCA, which none of the other applicants had.

Other facts are not as easily explained. The evidence shows that Betty Roistacher, hired as an executive secretary after working at ASCA on a temporary basis, also exhibited deception during her polygraph examination (regarding thefts from former employers). Ms. Roistacher was hired for a position of responsibility despite this result. Jackie Ray, the woman hired for the position which plaintiff sought, also exhibited deception on her polygraph.

Defendant explains the hiring of these individuals by stating that hiring decisions are based on many factors, not only the polygraph results. This conflicts with the reason given to the EEOC for the failure to hire Velma Smith.

The evidence received concerning the relative qualifications of plaintiff and the white female hired by defendant indicates that plaintiff was better qualified for the position of receptionist. Plaintiff had successfully performed in the position of receptionist for a period of two and one-half months prior to applying for the permanent receptionist position. The evidence shows that there was no difference in the job responsibilities of a temporary receptionist and the permanent receptionist position. Plaintiff had previous work experience as a receptionist, including duties as a PBS phone operator and teletype operator. Additionally, plaintiff had either one and one-half or two and one-half years of college credits toward a degree in Business Administration. (Plaintiff's application for employment states that she had 2½ years of college, which corresponds to her trial testi-

mony. The preemployment form used by Staples & Associates shows 1½ years of college.)

The white female selected for the job had no experience as an office receptionist nor as a telephone operator. Rather, Jackie Ray's experience was in the field of interior design and sales. Ms. Ray had some college credit toward a degree in Interior Design. She had never been employed by the defendant company and had never held a similar position with any company.

The evidence shows that plaintiff was treated differently in regard to the interview and hiring procedure, that she was the person most qualified for the position, and that a less qualified white female was selected for the position.

The evidence regarding defendant's hiring of minorities is unclear. The EEOC record shows that there were no minority clerical employees at ASCA during the period from August 1, 1980 to December 31, 1980 and that all vacancies filled during that period were filled by whites. (Plaintiff's Exhibits 2 and 7.) The information supplied by defendant to the EEOC shows that in November of 1980 the company employed five blacks and one American Indian, all as field workers. There were fifty-six total employees at that time. (Plaintiff's Exhibit 4.)

Everett Thomas testified that in 1980 there were blacks employed in maintenance and installation, but that he had no records on employees' races and could not give precise figures. He stated that there were six blacks (out of 27) employed in the company's office at the time of trial. Larry Wallace testified that there have always been black employees and that at trial time there were nine black and two hispanic field employees (out of 32). There were no blacks in managerial positions. Betty Roistacher (hired October 20, 1980) testified that there have been two black receptionists and one black secretary during her employment at ASCA. According to plaintiff, there was one other black applicant for the receptionist position in the fall of 1980.

## CONCLUSIONS OF LAW

This court has jurisdiction over the parties based upon 42 U.S.C. § 1981 and 42 U.S.C. § 2000e (Title VII of the 1964 Civil Rights Act).

*Adverse Impact*

■ In a case alleging adverse impact, a three-step analysis is employed. First, the plaintiff has the burden of proving that the facially neutral selection factor has an adverse impact on a protected class. The employer then must show that the neutral factor is a business necessity. The plaintiff then has the opportunity to show that there exist alternative selection devices which would serve the employer's interest but which would not have a similar undesirable impact on the protected group. *Griggs v. Duke Power*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). In this case, plaintiff has not carried the burden of showing that the defendant's selection procedure has a disparate impact on black persons in the state of Georgia.

■ In order to establish a *prima facie* case of disparate impact, plaintiff must show that defendant has a *policy* of rejecting applicants for the reason plaintiff was rejected. *EEOC v. Local 638, et al.*, 401 F.Supp. 467, 482 (S.D.N.Y.1975); *Green v. Missouri Pacific Railroad Company*, 523 F.2d 1290 (8th Cir.1975). There are three recognized ways to establish a *prima facie* case: 1) to show that blacks as a class are excluded by the practice in question at a higher rate than whites; 2) to compare the percentage of black and white applicants actually excluded by the company in question or 3) to compare the percentage of blacks employed by the company to the percentage in the relevant geographical area. *Green, supra* at 1293–1294. The court finds that plaintiff has not made a *prima facie* case under any of these methods.

■ Plaintiff relies on well-settled case law invalidating the use of arrest records as a selection technique. *Gregory v. Lit-*

ton Systems, 316 F.Supp. 401 (C.D.Cal. 1970), aff'd, 472 F.2d 631 (9th Cir.1972); Reynolds v. Sheet Metal Workers' Local 102, 498 F.Supp. 952 (D.C.D.C.1980); Green v. Missouri Pacific Railroad Co., 523 F.2d 1290 (8th Cir.1975); Johnson v. Goodyear Tire and Rubber Co., 491 F.2d 1364 (5th Cir.1974). In each of these cases, the defendant company had a set policy of inquiring about an applicant's arrest record and rejecting all applicants who had significant arrest records. This policy is illegal because it has been shown to eliminate black applicants at a higher rate than white applicants and is usually irrelevant as a predictor of job performance.

The present case does not fit the pattern of the cases cited above for several reasons. First, there has been no showing that ASCA has a policy of excluding applicants with arrest records, or even applicants whose polygraph results reflect deception concerning arrest records. Betty Roistacher was hired despite the indication of deception on her polygraph.

In this case, the practice under attack is not the exclusion of applicants with arrest records. In fact, the defendant did not even know if Velma Smith actually had an arrest record when they refused to hire her. The practice complained of is the use of a polygraph examination which inquires into the applicant's arrest record.

Velma Smith's polygraph reflected deception in response to the inquiry about prior arrests. It is the deception which defendants assert was a reason for their failure to hire her. There is no evidence in the record that the failure to hire was based on the possibility that Velma Smith had been arrested.

This case is factually comparable to Jimerson v. Kisco Company, Inc., 404 F.Supp. 338 (E.D.Mo.1975), affirmed, 542 F.2d 1008 (8th Cir.1976) where the Court rejected plaintiff's adverse impact claim since he was excluded for falsifying his application and not because of his arrest record. The Court stated that in order to establish a prima facie case of adverse impact, plaintiff would have to show that blacks as a class were excluded for falsification at a higher rate than whites, which was not demonstrated. 542 F.2d at 1010. Neither has it been demonstrated here.

In the present case, plaintiff's statistical evidence was addressed to the adverse impact of rejecting applicants based on their arrest records. It has been conclusively established that blacks are arrested at a significantly higher rate than whites. It has not been established that defendant automatically excludes applicants who have been arrested. More importantly, it has not been established that plaintiff was refused employment solely on the basis of the results of her polygraph examination.

Although the use of polygraph examinations is highly controversial, it has not been shown that their use disparately impacts upon minorities. To make such a prima facie showing, plaintiff would have to demonstrate that the procedure selects applicants in a racial pattern significantly different from that of the applicant pool. Ramirez v. City of Omaha, 678 F.2d 751, 753 (8th Cir.1982). The only evidence of this nature in the record shows that there were two black applicants out of fourteen (the name of the second is not known) for the receptionist position and that a white was selected. There is also evidence that two blacks have been hired since plaintiff was rejected, presumably after submitting to the required polygraph examinations. In short, there is insufficient evidence to conclude that defendant's selection procedure has or did have a disparate impact on blacks.

*Disparate Treatment*

■ The legal elements of a claim under Title VII are identical to those under § 1981. Lincoln v. Board of Regents, 697 F.2d 928, 935 (11th Cir.1983). The order and allocation of proof in a disparate treatment case is that set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to establish a prima facie case of racial discrimination in selection decisions, a plaintiff must show: 1) that he belonged to a protected group; 2) that he applied and

was qualified for a job for which the employer was seeking applicants; 3) that despite his qualifications he was rejected; 4) that other employees with similar qualifications who were not members of the protected group were selected for the position.

■ Once a *prima facie* case has been shown, the defendant has the duty to articulate a legitimate nondiscriminatory reason for the employment decision made. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This is a burden of production, not persuasion. *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1556 (11th Cir.1983). After the defendant has articulated a legitimate nondiscriminatory reason for its doctrine, the plaintiff has the burden of showing by a preponderance of the evidence that the defendant's reason is a pretext for a discriminatory decision. *Perryman v. Johnson Products Co.,* 698 F.2d 1138 (11th Cir.1983). The burden of showing pretext "merges" with plaintiff's ultimate burden of proving unlawful discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ The court finds that plaintiff has clearly established a *prima facie* case of discrimination based upon the evidence in the record. Plaintiff is black, she applied for the receptionist position for which she was qualified, she was rejected, and a white applicant with equal or lesser qualifications was hired.

The burden of rebutting this *prima facie* case shifts at this point. The defendant must produce evidence sufficient to raise a genuine issue of fact as to whether it discriminated against plaintiff. The reasons articulated for the hiring decision must be "legally sufficient to justify a judgment for the defendant." *Lincoln v. Board of Regents of University System,* 697 F.2d 928, 937 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983), citing *Burdine, supra.* In the present case the court finds that defendant has failed to meet this burden.

The defendant has not clearly articulated a reason for selecting the white person over the plaintiff. The initial reason given was that the white persons had more "accounting experience." The defendant then retracted this reason and stated that the polygraph results were determinative. The defendant has not relied on any one factor, but points to the overall qualifications of both plaintiff and the white female to justify the selection. The fact that defendant has not clarified the basis for its decision essentially constitutes a failure to articulate a legitimate nondiscriminatory reason for that decision.

■ Even if the court were to find that defendant has articulated a legitimate reason for not hiring plaintiff, its explanations lack credibility. Although plaintiff's polygraph examination reflected some deception, which might otherwise be a legitimate reason for refusing to hire, the evidence shows that Jackie Ray also exhibited deception in her polygraph and was nevertheless hired. Therefore, the polygraph results cannot be considered a legitimate basis for defendant's hiring decision. Further, plaintiff's overall qualifications were better than Jackie Ray's. The defendant's explanations for failure to hire plaintiff are inconsistent with the evidence and therefore unpersuasive. Where the defendant's explanation lacks credibility or where discrimination is the more likely motive, a case is made for pretext. *Clark v. Huntsville City Bd. of Educ.,* 717 F.2d 525, 527 (11th Cir.1983), citing *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ In a disparate treatment case, plaintiff always bears the ultimate burden of persuading the court that defendant intentionally discriminated against her. *Eastland v. Tennessee Valley Authority,* 704 F.2d 613, 619 (11th Cir.1983); *Lanphear v. Prokop,* 703 F.2d 1311, 1314 (D.C. Cir.1983). Plaintiff must prove that race was a significant factor in defendant's decision. *Lincoln,* 697 F.2d at 938. Under the Supreme Court's *Burdine* guidelines, when a defendant fails to produce sufficient credible evidence to rebut a *prima facie* case,

plaintiff will prevail without any further showing. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. The court is permitted to infer discriminatory motive, which is extremely difficult to prove directly.

The court has concluded that plaintiff should prevail on her disparate treatment claim. The evidence shows that plaintiff was better qualified for the receptionist job than the white person who was selected. The evidence also shows that plaintiff was treated differently from the other applicants during the selection process. Although plaintiff exhibited signs of deception in her polygraph test, the person selected for the job also exhibited deception, as did the executive secretary hired a few weeks earlier.

 There are several other factors which indicate that plaintiff was discriminated against. The EEOC determined that there was reasonable cause to believe plaintiff's charge was true. This finding is "highly probative of the ultimate issue." *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1554 n. 4, quoting *Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 (5th Cir.1972). The court also notes the apparent absence of any objective hiring standards used by defendant. "The failure to establish fixed or reasonably objective standards or procedures for hiring is a discriminatory practice." *Watson v. National Linen Service*, 686 F.2d 877, 881 (11th Cir.1982); *Harris v. Birmingham Board of Educ.*, 712 F.2d 1377, 1383 (11th Cir.1983). Finally, the court notes that there were no blacks employed by defendant in its office at the time plaintiff applied for the receptionist job. At that time approximately 10% of ASCA's employees were black, and all were field workers. Statistics introduced by plaintiff show that 28.2% of Atlanta's population was black in 1980. (Plaintiff's Exhibit 15.) There is no evidence that defendant had ever employed blacks in its office prior to 1980.

### RELIEF TO BE GRANTED

 The plaintiff seeks multiple relief in this case, including, instatement in the position of receptionist or a position comparable, back pay, compensatory damages for mental and emotional suffering, punitive damages, and injunctive relief. After a careful consideration of the facts and circumstances as revealed by the record, it appears to the court that the plaintiff is only entitled to recover a back pay award in this case. There is no basis for injunctive relief as the court has not found that the manner in which the defendant utilized polygraph examination and arrest information was illegal. Further, the evidence does not establish a sufficient basis upon which compensatory damages or punitive damages could be awarded. It has not been shown that the failure or refusal to hire the plaintiff as a full time receptionist was the proximate cause of any mental and emotional stress or pain that the plaintiff might have suffered. Punitive damages is not an appropriate award in this case as the evidence does not show that the defendant acted with malice, wilfullness or reckless disregard for plaintiff's federally protected rights.

In view of the fact that the plaintiff was never employed in the job that she was seeking (full time receptionist) she has no claim for reinstatement or related benefits which might accrue to a person on the job. She only held the position of receptionist as a temporary employee through the auspices of Tempo Temps. The law does allow a plaintiff who has been refused employment for racially discriminatory reasons to seek, and in an appropriate case, be granted affirmative relief of being hired by the employer if there is an opening or be placed in a preferred position among other applicants where there is no opening. It does not appear to the court that such relief would be mandatory or feasible under the facts and circumstances of this case. There is the matter as to whether the same type of job is open and available at this time. More significantly, the plaintiff has moved away from the area and has studied for and become engaged in a new line of work as a cosmetologist. Because of these factors and other matters, such as

passage of time, and the small number of persons employed by defendant company, the court would decline to grant the affirmative relief requested by the plaintiff.

There still remains the matter of how much back pay the plaintiff is entitled to recover in this case. It seems clear to the court that she is at least entitled to recover the amount of lost earnings sustained at least until she began working as a cosmetologist. It must be taken into consideration that any earnings plaintiff may have earned by the exercise of reasonable and proper diligence following the failure to hire her could operate to reduce any award of back pay.

### CONCLUSION

As indicated hereinabove, the court has concluded that the plaintiff has made out a case that the defendant intentionally discriminated against her on the basis of race with respect its refusal to hire her as receptionist. The proof offered sustains the case in favor of the plaintiff on the disparant treatment claim only. Plaintiff has proved discrimination under both Title VII and § 1981. In accordance with the guidelines set forth in this memorandum opinion, the plaintiff is entitled to a recovery of back pay, reasonable attorney's fees and court costs, all of which will be set forth in an appropriate judgment at a later date. In the meanwhile, within twenty days from this date of this opinion, the attorneys for the parties are to confer in an effort to reach a consensus on a back pay award and shall promptly submit the same in writing to the court. In the event no agreement is reached, the parties are to submit their respective positions to the court with recommendations as to how this phase of the case might be resolved. Within the same period of time, the attorney for the plaintiff shall submit a claim for attorney's fees together with an affidavit and any other pertinent information; the defendant having ten days after service to respond to the attorney's fees claim.