939 F.2d 946
 57 Empl. Prac. Dec. P 40,947
 Johnny Mac BROWN, Plaintiff-Appellant,
v.
AMERICAN HONDA MOTOR COMPANY, INC., Jerry Felty, Defendants-Appellees,
Philip R. Hughes, Ashley D. Hughes, Hughes Auto Sales, Inc.,
Intervenors-Defendants.
 No. 90-8487.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 23, 1991.
 
 Thomas Broughton Branch, III, Branch, Pike & Ganz, Frank O. Brown, Jr., Atlanta, Ga., for plaintiff-appellant.
 Dorothy Y. Kirkley, Paul, Hastings, Janofsky & Walker, Atlanta, Ga., J. Donald McCarthy, Lyon & Lyon, Los Angeles, Cal., Kevin C. Gallagher, Paul, Hastings, Janofsky & Walker, Atlanta, Ga., for defendants-appellees.
 J. Edward Allen, Fortson, Bentley and Griffin, P.A., Athens, Ga., Ronald T. Coleman, Jr., Paul, Hastings, Janofsky & Walker, Atlanta, Ga., for intervenors-defendants.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH and COX, Circuit Judges, and RONEY, Senior Circuit Judge.
 RONEY, Senior Circuit Judge:
 
 
 1
 Plaintiff Johnny Mac Brown brought suit under 42 U.S.C. Sec. 1981 alleging that American Honda Motor Company (Honda) rejected his bid to obtain a Honda dealership in Warner Robbins, Georgia, for racially discriminatory reasons. To succeed, plaintiff would have to show that Honda intentionally discriminated against him on the basis of race. See General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 389-91, 102 S.Ct. 3141, 3149-50, 73 L.Ed.2d 835 (1982). We affirm the summary judgment for defendants American Honda Motor Company, Inc. and Jerry Felty on the ground that the district court correctly concluded that the business reasons advanced by defendants for awarding the dealership to Hughes Auto Sales, Inc. were not a pretext for intentional discrimination against Brown because he was black.
 
 
 2
 Although the plaintiff asserts that this case is important to the developing law of discrimination claims asserted under section 1981, we believe the case involves nothing more than the application of established law, about which the parties do not disagree, to the individual facts of this case. Although the facts of this case present a very close question, it presents a situation which has been addressed by a host of other courts. See, e.g., Williams v. City of Sioux Falls, 846 F.2d 509 (8th Cir.1988) (black contractor alleged city violated Sec. 1981 by denying his bid on basis of race); Taylor v. City of St. Louis, 702 F.2d 695 (8th Cir.1983) (black businesswoman maintained contract was denied on account of race); T & S Service Assoc. v. Crenson, 666 F.2d 722 (1st Cir.1981) (minority owned business did not receive contract and sued under Sec. 1981); Howard Security Services, Inc. v. Johns Hopkins Hospital, 516 F.Supp. 508 (D.Md.1981) (same); Scott v. Clark, 436 F.Supp. 569 (D.Mo.1977) (black refuse collector sued under Sec. 1981 alleging racial motive for failure to grant contract).
 
 
 3
 The triggering facts can be briefly stated. In early September of 1984, the plaintiff learned that Honda planned to open a new dealership in Warner Robbins, Georgia. At that time, plaintiff owned and operated a General Motors dealership in Warner Robbins and was anxious to expand his operations. Initially, he and two other white individuals submitted applications to Honda. The other two applicants also had existing dealerships in the Warner Robbins area. Honda then contacted one of its own dealers, Phil Hughes, who ran a Honda dealership 120 miles away in Athens, Georgia. Allegedly, Honda encouraged Hughes, who is white, to submit an application and actively assisted in his efforts to obtain the contract. Hughes eventually received approval from Honda to open the dealership.
 
 
 4
 The plaintiff brought suit seeking both equitable relief and damages. District Judge Horace T. Ward bifurcated the proceedings and denied plaintiff's request for a preliminary injunction after a full evidentiary hearing. After further discovery, the defendant filed a motion for summary judgment which was granted.
 
 
 5
 The district court found these undisputed facts: four applications were submitted to American Honda by persons seeking to become the American Honda franchisee for Warner Robbins, Georgia. They were submitted by (1) plaintiff Johnny Mac Brown, (2) Philip and Ashley Hughes, (3) Dan G. Walton, and (4) Billy B. Butler. Johnny Mac Brown is black; Philip and Ashley Hughes, Dan G. Walter and Billy B. Butler are white. All of the applications met American Honda's minimum requirements. Of the four applicants, however, only the Hugheses had prior experience in the sales and service of Honda automobiles. In addition, only the Hugheses' application showed that they would sell exclusively Honda automobiles in the Warner Robbins market. Philip and Ashley Hughes were chosen by American Honda to receive the American Honda franchise in Warner Robbins.
 
 Legal Standard
 
 6
 The plaintiff correctly notes that the basis for a federal race discrimination claim by a non-employee against a private company is under 42 U.S.C. Sec. 1981. Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Section 1981 provides that all citizens shall have the same right to "make and enforce contracts." The aim of the statute is to remove the impediment of discrimination from a minority citizen's ability to participate fully and equally in the marketplace. Patterson, at 176, 109 S.Ct. at 2372, 105 L.Ed.2d at 150. This right extends not only to interactions between citizens and government, but to wholly private business dealings as well. St. Francis College v. Al-Khazraji, 481 U.S. 604, 609, 107 S.Ct. 2022-2026, 95 L.Ed.2d 582 (1987).
 
 
 7
 Section 1981 requires proof of intentional discrimination. General Building Contractors Association v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); Washington v. Davis, 426 U.S. 229, 246-48, 96 S.Ct. 2040, 2050-52, 48 L.Ed.2d 597 (1976); Baldwin v. Birmingham Board of Education, 648 F.2d 950, 954 (5th Cir. Unit B 1981); Crawford v. Western Electric Co., 614 F.2d 1300, 1309 (5th Cir.1980). The Supreme Court has held that the test for intentional discrimination in suits under Sec. 1981 is the same as the formulation used in Title VII discriminatory treatment causes. Patterson, 491 U.S. at 185-87, 109 S.Ct. at 2377-78, 105 L.Ed.2d at 156-57. Under the familiar McDonnell Douglas/Burdine framework, the court employs a three part test designed to determine the motivation of the defendant in taking the challenged action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
 
 
 8
 The initial burden rests with the plaintiff to demonstrate by a preponderance of the evidence a prima facie case of discrimination. Id. at 252-53, 101 S.Ct. at 1093-94. This burden is not onerous, id. at 253, 101 S.Ct. at 1094, and can be met by simply demonstrating that the plaintiff is a member of a minority group, that he submitted an application or bid which met the requirements for an available contract, that the application or bid was ultimately rejected, and that the contract was eventually given to an individual who is not a member of a protected class. Patterson, 491 U.S. at 187, 109 S.Ct. at 2378, 105 L.Ed.2d at 157; Zaklama v. Mount Sinai Medical Center, 842 F.2d 291, 293 (11th Cir.1988). Thereafter the defendant must come forward with evidence demonstrating legitimate, nondiscriminatory reasons for its conduct. Burdine, 450 U.S. at 254, 101 S.Ct. at 1094. It is important to note that the burden on the defendant is one of production not persuasion. Id. at 254-55, 101 S.Ct. at 1094-95; Eastland v. Tennessee Valley Authority, 704 F.2d 613, 618-19 (11th Cir.1983). Once the defendant satisfies this obligation, it is incumbent on the plaintiff to produce evidence suggesting that those reasons are merely a pretext, the real reason for the action having been based on race. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095.
 
 
 9
 District Court's Application of the Legal Standard
 
 
 10
 Following McDonnell Douglas and its progeny, the district court would have denied summary judgment for defendant insofar as it challenged plaintiff's prima facie case. The plaintiff is a member of a minority group, his proposal met the specifications required, and the franchise agreement was awarded to white applicants. The defendant does not argue that the court was incorrect in this determination.
 
 
 11
 The district court held, however, that to withstand a defendant's motion for summary judgment, a plaintiff had to do more than establish a prima facie case and deny the credibility of defendant's witnesses. Schuler v. Chronicle Broadcasting Co., 793 F.2d 1010, 1011 (9th Cir.1986). Throughout the proceeding the burden of persuasion and the burden of proving intentional discrimination remains with the plaintiff. Accordingly, despite the general presumption against using summary judgment to resolve the largely factual questions concerning discriminatory intent, Beard v. Annis, 730 F.2d 741, 743 (11th Cir.1984), it is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir.1987). If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination. It does not appear from this record that the plaintiff has done that in this case.
 
 
 12
 The district court held that the two reasons articulated by defendants for not selecting either plaintiff's application or either of the other two applications were legitimate and nondiscriminatory. The case turns on whether these were the real reasons, or simply pretexts given for a decision that was actually based on race. On this point, not surprisingly, there is no direct evidence. As the plaintiff argues, seldom is there direct evidence of intentional racial discrimination. Grigsby, 821 F.2d at 595 (McDonnell Douglas-Burdine test is designed to ease burdens on discrimination plaintiffs when direct evidence of discrimination is lacking).
 
 
 13
 The district court carefully examined the circumstantial evidence which plaintiff asserts demonstrates that these reasons are pretextual: differences in treatment between plaintiff and the Hugheses, defendants' failure to seriously consider plaintiff's application, selection of a less qualified white applicant over a more qualified minority applicant, deviations from the policy or practice of defendants regarding new dealerships, statistical evidence, and an asserted lack of credibility in the reasons asserted by defendant. Partially relying on the fact that two white applicants, both of whom had filed applications that satisfied Honda's minimum requirements, also did not receive the dealership, the district court ruled that the plaintiff's evidence was not sufficiently probative to create an issue of fact on the pretext issue. The plaintiff has failed to persuade us that the district court was wrong in this decision.
 
 
 14
 In addition to the material that is usually submitted on a motion for summary judgment, the district court had the advantage of a bench trial on the request for permanent injunction. After that trial, which lasted several days, the court made findings of fact, denied the injunction, and entered a declaratory decree that the Hugheses, who had intervened, were entitled to become American Honda's Warner Robbins dealer.
 
 
 15
 The district court properly held that the defendants could not prevail on this motion for summary judgment simply because of the outcome of that proceeding. The parties stipulated that the findings of fact would have no preclusive effect on a jury's deliberations. The court could not take into consideration any facts then found which resolved disputed evidence. The court could, however, consider the record made at that time to determine whether there was sufficient evidence to present to the jury on the issue of pretext. Based on both the previous hearing and the evidence presented in this case, the district court concluded that the plaintiff had not demonstrated that the reasons Honda gave for denying Brown's application were pretextual.
 
 Nondiscriminatory Rationales
 
 16
 Honda advanced two reasons for its decision to grant the dealership in Warner Robbins to the Hugheses. First, the Hugheses were existing Honda dealers with an excellent record and a familiarity with the company and its way of doing business. Honda's reasons for selecting Philip and Ashley Hughes were clearly legitimate and nondiscriminatory. It is not at all improper for an employer or a business contemplating a long-term association to prefer doing business with someone with whom they are familiar. The Hugheses had run what was by all accounts an exemplary business in Athens. They were familiar with the Honda product line, its distribution and warranty systems, and managerial approaches to sales tactics and advertising techniques. On that basis alone, Honda could legitimately encourage them to apply and thereafter select them to run the new dealership in Warner Robbins. McMillian v. Svetanoff, 878 F.2d 186, 189 (7th Cir.1989) (employer's desire to hire someone with whom it was familiar was legitimate, nondiscriminatory basis for termination); Holder v. City of Raleigh, 867 F.2d 823, 825-26 (4th Cir.1989) (no discriminatory motivation when decision based on favoritism toward relatives even if reasons proffered were pretextual); Waters v. Furnco Const. Corp., 688 F.2d 39, 40 (7th Cir.1982) (hiring workers with whom employer is familiar is legitimate, nondiscriminatory rationale); Aguirre-Molina v. New York State Division of Alcoholism and Alcohol Abuse, 675 F.Supp. 53, 60 (N.D.N.Y.1987) (preference for individual's with an established record who are "known quantity" is legitimate basis for action).
 
 
 17
 Although Brown questions whether the Honda system is really so complicated that an experienced dealer in another line would not be able to master it in short order, the court's responsibility was not to second guess the wisdom of Honda's reasoning, but to determine if the reasons given were merely a cover for a discriminatory intent. A contract may be granted "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as it [ ] is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir.1984) (citation omitted); Mister v. Illinois Central Gulf R.R. Co., 832 F.2d 1427, 1435 (7th Cir.1987) (absence of "good reasons" does not justify a finding of pretext unless evidence suggests discriminatory intent).
 
 
 18
 Second, Honda alleges that it based part of its decision on the fact that the Hugheses were the only applicants proposing to sell only Hondas in Warner Robbins. This, too, was a legitimate and nondiscriminatory justification for its decision. Honda could legitimately determine that a dealer that devotes its attention solely to the sale of Hondas would be preferable to one that attempted to sell several different car lines in the same geographic region. Not only would multiple lines distract the owner's managerial attention, but they would split the dealer's loyalties between the two or more lines. Even the plaintiff's expert admitted it would be preferable from the manufacturer's standpoint to have a dealer sell only one line in a geographic area.
 
 Pretext
 
 19
 Plaintiff argues that he can prevail, however, if the reasons advanced by Honda are actually pretexts for an underlying discriminatory purpose, despite any facial appearance of neutrality. Initially, plaintiff notes that neither of the justifications espoused by Honda appear in Honda's own manual discussing the factors relevant to selecting new dealers. Oftentimes, departures from well established guidelines are indicative of attempts to conceal a discriminatory motive through the use of ad hoc criteria which allow the defendant to cloak a discriminatory intent in ostensibly neutral rationales. See Gibralter v. City of New York, 612 F.Supp. 125, 129 (E.D.N.Y.1985) (departures from normal procedures can supply evidence of discriminatory intent); Blair v. Philadelphia Housing Authority, 609 F.Supp. 276, 279 (E.D.Pa.1985) (same). This Court has concluded that selection processes which are conducted in an ad hoc or discretionary manner must be viewed with particular suspicion. Fowler v. Blue Bell, Inc., 737 F.2d 1007, 1011 (11th Cir.1984). Brown suggests that Honda's deviation from its own manual clearly indicates that the reasons Honda put forth were pretextual.
 
 
 20
 What the plaintiff ignores, however, is that each of the practices complained of affected the two white candidates in precisely the same manner that they affected the plaintiff. Neither Butler nor Walters were existing dealers nor did their applications suggest that they planned on selling only Honda vehicles in Warner Robbins. It is difficult to hold that a practice which affects applicants of all races in the same manner is actually designed to conceal a racially discriminatory motive. Giles v. Ireland, 742 F.2d 1366, 1375-76 (11th Cir.1984) (hiring criteria which affects both blacks and whites equally is not discriminatory); Cannon v. Teamsters & Chauffeurs Union, 657 F.2d 173, 176-77 (7th Cir.1981) (same).
 
 
 21
 Although Honda's expressed preference for existing dealers did not appear in the manual, Honda did demonstrate that 10 of the last 13 new sites were filled with existing dealers. Honda representatives in this corporate region have consistently demonstrated a preference for individuals with whom they are familiar and who have a working knowledge of the company. Nothing in the Honda manual implies that the factors listed are the only basis on which a decision can be made. The evidence supports the defendant's assertion that this criteria has not been used subjectively to accomplish an illegal purpose. Conner v. Fort Gordon Bus Co., 761 F.2d 1495, 1499-1500 (11th Cir.1985) (failure to resort to written guidelines is not evidence of pretext); Risher v. Aldridge, 889 F.2d 592, 597 (5th Cir.1989) (agency's disregard for its own hiring system does not in itself demonstrate that nondiscriminatory explanation is pretextual). Departure from established procedures evident in this case is insufficient to support a conclusion of discriminatory intent. See Clark v. Huntsville City Bd. of Educ., 717 F.2d 525, 528 (11th Cir.1983) (plaintiff must demonstrate that defendant departed from written guidelines in an effort to accomplish a discriminatory purpose).
 
 
 22
 Plaintiff points out that out of approximately 860 Honda dealers nationwide only two are black. Statistical evidence is an appropriate method for demonstrating both a prima facie case of discrimination and pretext. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1258 (10th Cir.1988); Tanner v. McCall, 625 F.2d 1183, 1192-93 n. 16 (5th Cir.1980) (statistics can be used to show that defendant's asserted reasons for decision were a pretext); Person v. J.S. Alberici Construction Co., 640 F.2d 916, 919 (8th Cir.1981) (statistics can be used to show discriminatory motive); cf. Patterson, 491 U.S. at 187-88, 109 S.Ct. at 2378-79, 105 L.Ed.2d at 157-58 (plaintiff is not to be limited in the manner used to show pretext).
 
 
 23
 Statistics such as these, however, without an analytic foundation, are virtually meaningless. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). To say that very few blacks have been selected by Honda does not say a great deal about Honda's practices unless we know how many blacks have applied and failed and compare that to the success rate of equally qualified white applicants.
 
 
 24
 Although the statistics themselves may be insufficient to demonstrate that the reasons espoused by Honda are not legitimate, they take on a slightly more ominous hue when viewed in conjunction with the criteria used by Honda in this case. In addition to there being only two black Honda dealers nationwide, there are none in this particular corporate region. Plaintiff suggests that a criteria which favors existing dealers under these circumstances is inherently discriminatory in that all existing dealers are white. Moreover, Honda does not disseminate information concerning new dealerships throughout the automobile industry generally, but instead uses a word of mouth system which the plaintiff contends gives yet another advantage to company insiders, all of whom are white.
 
 
 25
 Were this a discriminatory impact case under Title VII, this argument, which maintains that factors or criteria which appear to be neutral actually have a discriminatory effect, might be controlling. Section 1981 requires specific proof of an intent to discriminate, however. Under this type of analysis it is not sufficient to show that the defendant was aware that the particular practice would have a discriminatory impact. Instead, the plaintiff must show that the defendant chose the policy for precisely this purpose. Forsberg v. Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1418 (9th Cir.1988). There is no such evidence in this case.
 
 
 26
 Plaintiff argues his application and credentials were superior to those of the Hugheses. According to the plaintiff, his community contacts, net worth, proposed floor space, initial capital investment, and location presented a more favorable application package than that submitted by either the Hugheses or the other two candidates. See Smith v. American Service Co. of Atlanta, 611 F.Supp. 321, 328-29 (N.D.Ga.1984) (choice of a less qualified applicant can serve as evidence of discriminatory intent), aff'd in part, vacated in part, 796 F.2d 1430 (11th Cir.1986).
 
 
 27
 Accepting plaintiff's conclusion that his application was superior to the Hugheses' in virtually every listed aspect does not compel a decision in plaintiff's favor. To rebut plaintiff's prima facie case, the defendant need not demonstrate that the individual or company selected was actually more qualified than the plaintiff, rather it must only show that it had a legitimate nondiscriminatory reason for its action. Crawford v. Western Electric Co., 745 F.2d 1373, 1377 (11th Cir.1984). In any event, in this case, the fact that Honda had experience with the Hugheses makes a point by point comparison of the applicants' credentials less useful.
 
 
 28
 Plaintiff suggests that his application was not taken seriously and that he was treated differently in the application process from the white candidates. Nix, 738 F.2d at 1186 (discriminatory intent can be shown through inconsistent or unequal treatment of similarly situated individuals); McAlester, 851 F.2d at 1256-59 (same). Plaintiff's primary contention is that despite repeated requests for additional information he was not given access to internal Honda data which would have been of substantial assistance in preparation of the application while the same information was given to two of the white candidates. Factual disputes about this issue do not control the summary judgment decision, however. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986) (emphasis in original). Plaintiff could not prevail unless he could show that but for his race, he would have received this Honda franchise. This Circuit has stated on numerous occasions that the McDonnell Douglas-Burdine test is merely a tool for analyzing cases in which there is no direct evidence of discrimination. See, e.g., Grigsby, 821 F.2d at 595 (citation omitted); Nix, 738 F.2d at 1184. The test, therefore, is not an end in itself, but is instead a means for sifting through the circumstantial evidence presented to determine if the defendant treated the plaintiff differently because of his race. The ultimate inquiry remains whether the plaintiff has demonstrated that the defendant intentionally discriminated in refusing to enter into a contractual relationship. Grigsby, 821 F.2d at 595. The court is warranted in granting judgment to the defendant unless the plaintiff satisfies the ultimate burden of persuasion by demonstrating that the defendant relied on race in making its decision. Nix, 738 F.2d at 1184-85; Clark, 717 F.2d at 529.
 
 
 29
 A review of the record supports the decision that Honda selected the Hugheses not for any discriminatory purpose but because it knew them and had confidence in their abilities. Although the plaintiff has produced scattered pieces of circumstantial evidence, none of it, even taken as a whole, raises sufficient questions to undermine Honda's nondiscriminatory rationale.
 
 Discovery Requests
 
 30
 It does not appear that the district court erred in denying plaintiff's motion to reopen discovery. Nearly a year after discovery closed, plaintiff requested that the district court reopen discovery to allow plaintiff to make inquiries into an EEOC agreement with the manufacturing component of Honda's American operations (HAM Inc.). The EEOC had charged HAM Inc. in that complaint with maintaining discriminatory hiring and promotion practices.
 
 
 31
 HAM Inc., however, is a separate corporation which operates on the opposite end of the industry spectrum. Absent a showing of "particularized need and relevance" plaintiffs may not compel discovery from related corporations or even separate units of the same corporation. Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir.1978). The hiring practices used by a related subsidiary involved in production and located in Ohio are simply not relevant to the intent of a separate corporation involved in sales and located in Georgia. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1084-85 (11th 1990).
 
 
 32
 Neither does it appear that the district court erred in denying plaintiff's motion to compel production of information by the defendant concerning all blacks who had communicated an interest in becoming a Honda dealer, concerning all Honda officers who had been informed of the present suit, and concerning all governmental or private organizations that have complained of discriminatory practices to Honda in the past. These matters are generally consigned to the discretion of the district court. Earley, 907 F.2d at 1085 (denial of motion to compel nationwide discovery will only be reversed if it constitutes an abuse of discretion). The court was within its discretion in holding that the information sought was simply too broad. Unless it is clear that nationwide practices are relevant, discovery should be confined to the local units of a corporation. Earley, 907 F.2d at 1084.
 
 
 33
 AFFIRMED.