**Henry COOK and C & S Industrial Supply, Inc., Plaintiffs,**

v.

**CITY OF CUTHBERT, GEORGIA, Willie Martin, et al., Defendants.**

No. 4:00–CV–156–3(CDL)

United States District Court,
M.D. Georgia,
Columbus Division.

Feb. 14, 2002.

Rodney M. Keys, Maurice L. King, Jr., Albany, GA, for Plaintiffs.

William Harrison Hedrick, Albany, GA, Joseph Wiley, Jr., Columbus, GA, for Defendants.

## ORDER

LAND, District Judge.

This case arises from alleged racial discrimination committed by Defendants during their contracting process with Plaintiffs. Plaintiffs assert three federal counts designated in their complaint as "Count I—Discrimination in Contracting" (42 U.S.C. § 1981), "Count II—Pattern and Practice Liability" (42 U.S.C. § 1983), and "Count III—Conspiracy Liability" (42 U.S.C. §§ 1983 and 1985). Plaintiffs also assert pendent state law claims for breach of contract and intentional infliction of emotional distress (Counts IV and V). For the reasons set forth below, the Court finds that no genuine issues of material fact exist to be tried regarding Plaintiffs' federal claims, and that Defendants' motion for summary judgment should be, and is hereby, granted as to those claims. The Court declines to exercise pendent jurisdiction over Plaintiffs' state law claims, and therefore, those claims are dismissed without prejudice.

## BACKGROUND

Plaintiff Henry Cook (hereinafter "Cook") is an African–American male. He is the owner and only officer of Plaintiff C & S Industrial Supply, Inc. (hereinafter "C & S"). Cook is also chairman of the Randolph County Board of Education. C & S is engaged in the business of selling industrial supplies. C & S conducts business all over the country. It regularly does business with the government. Cook general-ly understands the governmental bidding process and has previously engaged in that process both through his company, C & S, and through his involvement with the Randolph County Board of Education.

On July 12, 1999, Cook appeared before the Cuthbert, Georgia, (hereinafter "City") Council seeking an opportunity to do business with the City. The next day Defendant Bill Sawyer (hereinafter "Sawyer"), who was the Cuthbert City Manager and is white, contacted Cook and purchased safety products from Plaintiffs without a bid. Shortly thereafter, Sawyer requested Cook to submit a proposal for an inventory control system. On October 11, 1999, Sawyer presented to the City Council a proposed contract between the City and Plaintiffs for an inventory control system. The contract amount was $26,222.00. The City Council, which consisted of four African–American and two white members, approved the contract by a 5–1 vote. The Mayor, who is African–American and is also named as a Defendant in this case, does not vote unless there is a tie. On October 13, 1999, the contract as authorized by the City Council was executed by the parties.

At the time that the City approved and executed the contract with Plaintiffs, the City had in place an ordinance regulating centralized purchasing by the City which required competitive bids to be submitted for all purchases exceeding $500.00. It is undisputed that the City violated its purchasing ordinance by awarding the contract to Plaintiffs without first placing the work out for competitive bidding. However, Plaintiffs contend (and Defendants do not seriously dispute) that this is not the first time that the City has violated its purchasing ordinance regarding competitive bidding.[1]

---

1. Plaintiffs contend that the City has engaged in a pattern and practice of applying the purchasing ordinance in a discriminatory manner by contracting with white contractors without requiring bids and yet insisting on the bidding process for African–American con-

Subsequent to the execution of the contract, another local merchant (hereinafter "Hixon"), who is white, protested that the City had not followed its purchasing ordinance when it contracted with Plaintiffs without first submitting the work out for bids. Based upon that protest and the advice of its legal counsel, the City Council voted on October 25, 1999, to rescind the contract with Plaintiffs and place the project out for competitive bidding.

In November 1999, bids were received from Plaintiffs and from Hixon. Plaintiffs simply submitted their previous contract price as their bid of $26,222.00. Hixon submitted a bid of $10,302.00.

On December 10, 1999, C & S sued the City in Randolph County Superior Court for breach of contract arising from its rescission of the previous contract. On December 29, 1999, Hixon notified the City that legal action would be taken against the City if the C & S bid was accepted.

Notwithstanding the legal threat by Hixon and the fact that the C & S bid was 150% higher than the Hixon bid, the City Council on February 28, 2000, voted to accept the C & S bid provided that C & S drop its breach of contract lawsuit against the City. A resolution was passed and memorandum of agreement prepared and executed by the parties on March 2, 2000. Pursuant to that agreement, the City issued a check to C & S as payment on the contract.

On March 3, 2000, Hixon filed suit against the City in the Superior Court of Randolph County alleging that the awarding of the contract to C & S was contrary to Georgia law. Hixon obtained a temporary restraining order from the Superior Court Judge, prohibiting the City from carrying out the C & S contract. Upon being served with the complaint and temporary restraining order, City Manager Sawyer directed the City's bank to stop payment on the check. Sawyer correctly interpreted the temporary restraining order as requiring him to do so.

On April 4, 2000, the Superior Court of Randolph County continued its temporary injunction pending resolution of the Hixon lawsuit. Faced with the distinct possibility that the contract with Plaintiffs may be voided by the Superior Court of Randolph County and believing that the merits of that lawsuit would be addressed expeditiously, the City's legal counsel consented to the continuation of the injunction pending a resolution of the Hixon case.

On May 5, 2000, C & S dismissed its breach of contract lawsuit in the Superior Court of Randolph County without prejudice. Plaintiffs have never attempted to intervene in the Hixon lawsuit, although no apparent reason exists to suggest that intervention would be denied. Preferring instead to make a federal case out of their complaints, Plaintiffs filed the present action in this court on September 15, 2000.

When asked in his deposition what actions taken by the Defendants were discriminatory, Cook responded, "I can't answer that question." Given the fact that the City initially awarded Plaintiffs the contract in violation of its purchasing ordinance and subsequently accepted Plaintiffs' bid even though it was 150% higher than the other competitive bid, it is no wonder that Plaintiffs may have some difficulty in articulating the alleged discriminatory conduct committed by Defendants. It appears that the primary conduct by Defendants that Plaintiffs now point to as discriminatory relates to the City's consent

tractors. Plaintiffs' own experience in this case of receiving the initial contract without submitting a bid, which was contrary to the purchasing ordinance, refutes this contention.

Had the City been motivated by racial animus, it is unlikely that it would have awarded the contract to Plaintiffs in the first place.

to the continuation of the injunction pending the resolution of the Hixon litigation.

### PLAINTIFFS' FEDERAL CLAIMS

Plaintiffs assert claims under 42 U.S.C. §§ 1981, 1983 and 1985. These claims are based upon identical facts.

#### A. Plaintiffs' § 1981 Claim[2]

Plaintiffs contend under Count I of their complaint that Defendants violated Section 1981 by "routinely and systematically" disregarding their purchasing ordinance for white contractors while insisting upon bids pursuant to the purchasing ordinance for African–American contractors. Section 1981 states in relevant part:

> "All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Section 1981 forbids intentional discrimination based upon race in the making and enforcement of contracts. All citizens shall have the same right to make and enforce contracts. "The aim of the statute is to remove the impediment of discrimination from a minority citizen's ability to participate fully and equally in the marketplace." *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 949 (11th Cir.1991), *certiorari denied*, 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106. "This right extends not only to interactions between citizens and government, but to wholly private business dealings as well." *Id.*

#### 1. The Legal Standard

Section 1981 requires proof of *intentional* discrimination. *Brown*, 939 F.2d at 949. The test for intentional discrimination under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases. *Id.* That three-part test was articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that test, the initial burden rests with plaintiff to demonstrate by a preponderance of the evidence a *prima facie* case of discrimination. This burden is met by demonstrating that the plaintiff is a member of a minority group, that he submitted a bid which met the requirements for an available contract, that the bid was ultimately rejected, and that the contract was eventually given to an individual who is not a member of a protected class. *Brown*, 939 F.2d at 949. After the plaintiff establishes a *prima facie* case, the defendant must come forward with evidence demonstrating legitimate, nondiscriminatory reasons for its conduct. The burden on defendant is one of production not persuasion. Once the defendant satisfies its burden of production, the burden shifts back to the plaintiff to produce evidence that defendant's proffered reasons are merely a pretext, the real reason having been race. *Id.*

If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence

---

**2.** It appears that § 1983 provides the exclusive remedy for Plaintiffs' claims for constitutional deprivations against the City. *See Butts v. County of Volusia*, 222 F.3d 891 (11th Cir. 2000), citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). However, since the legal analysis on the initial issue of whether Plaintiff can establish a constitutional violation (racial discrimination) is the same under § 1983 and § 1981, it does not matter in this case whether Plaintiff is proceeding under § 1983 or § 1981. *See Cardinal Towing & Auto Repair, Inc. v. City of Bedford*, 180 F.3d 686, 697 (5th Cir.1999).

demonstrating that the reasons given by defendant were a pretext for discrimination. If plaintiff fails to produce such evidence, then defendant is entitled to summary judgment. *Id.* at 950.

## 2. *Plaintiffs' Prima Facie Case*

■ The Court finds that Plaintiffs' have failed to make out a *prima facie* case of racial discrimination. Plaintiff, as an African–American, is clearly a member of a minority group. Assuming *arguendo* for purposes of this summary judgment motion that Plaintiff has complied with the requirements for the contract in question, Plaintiff has failed to satisfy the last two prongs for establishing a *prima facie* case. Plaintiff has produced no evidence that his bid for the contract has been rejected. In fact, the record reveals that Defendants went to great lengths to assure that he got the contract, notwithstanding that his bid was 150% higher than the other competitive bid. The only reason that he is not presently enjoying the fruits of the contract is that the Superior Court of Randolph County has enjoined the Defendants from proceeding until objections to Plaintiffs' bid are litigated.

Furthermore, there is no evidence that the contract in question was given to someone who is not a member of a protected class. To the contrary, Defendants awarded the contract to Plaintiffs. They issued a check to Plaintiffs. Only after they were sued by another party and served with a temporary restraining order preventing them from going forward with the contract with Plaintiffs did they stop payment on the check. As it stands now, the contract in question has been awarded to no one else. No evidence has been produced to show it has been given to a member of a non-protected class.

Accordingly, Plaintiffs have failed to produce sufficient evidence from which a reasonable jury could conclude that they have made out a *prima facie* case. Sum-

mary judgment is therefore appropriate in favor of Defendants. See Fed.R.Civ.P. 56.

## 3. *Pretext*

■ Even if Plaintiffs could make out a *prima facie* case, they have failed to produce sufficient evidence from which a reasonable jury could conclude that Defendants' reasons for not proceeding with the contract were pretextual. Therefore, summary judgment is appropriate for this reason also.

Defendants have produced evidence that they did not proceed with the contract because they are prevented from doing so by a valid order from a court having jurisdiction over them. Plaintiffs have produced no evidence to demonstrate that Defendants' proffered reason is pretextual. Plaintiffs' only contention is that Defendants should not have consented to the preliminary injunction. However, Plaintiffs have produced no evidence to establish that Defendants' consent to the preliminary injunction pending the outcome of the Hixon litigation was motivated in any way by race. Defendants contend that they consented to it because if they lost the Hixon litigation, the contract between the City and Plaintiffs would be void. Moreover, when their legal counsel consented to the preliminary injunction, he had a good faith belief that the issues in the Hixon litigation would be resolved expeditiously.

It is important to note that Plaintiffs had the opportunity to intervene in the Hixon litigation if they felt their interests were not adequately represented by the City, yet they chose not to intervene. In fact, Plaintiffs had the opportunity to litigate their breach of contract claim that they had filed against the City in the Superior Court of Randolph County; yet they chose to voluntarily dismiss that lawsuit. Therefore, Plaintiffs' argument at this stage of the proceedings that Defendants'

consent to a preliminary injunction deprived Plaintiffs of their opportunity to obtain the contract in question is unpersuasive. At a minimum, Plaintiffs acquiesced in the delay of the resolution of the Hixon litigation by refusing to intervene. Moreover, they are at least partly responsible for any delay in resolving their entitlement to the contract based upon their dismissal of their breach of contract suit against the City. While they certainly have the right to litigate any federal claims in this Court, their decision to abandon their rights to press the state court litigation aggressively cannot be used to their advantage in this case.

All of the Defendants' actions in this case demonstrate that they went to great lengths to provide Plaintiffs with the contract in question. Their conduct reveals a complete absence of discriminatory intent. In fact, an objective observer could justifiably conclude that the Defendants took *affirmative action* to award Plaintiffs the contract *because* of race. The Court finds that no reasonable jury could conclude that Defendants' legitimate and nondiscriminatory reasons for not proceeding with the contract were pretextual. Accordingly, summary judgment should be, and is hereby, granted in favor of Defendants on Plaintiffs' § 1981 claim (Count I).

### B. *Plaintiffs' § 1983 Claim*

Plaintiffs in Count II of their complaint contend that Defendants' alleged racial discrimination is contrary to the equal protection and due process clauses of the 14th Amendment to the Constitution and provides them with a legal cause of action pursuant to § 1983. Section 1983 provides in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress."

It is undisputed that § 1983 applies to Defendants. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, Plaintiffs' § 1983 claim fails as a matter of law based upon the same analysis set forth herein above regarding Plaintiffs' § 1981 claim.[3] Plaintiffs have simply failed to produce sufficient evidence from which a reasonable jury could conclude that Defendants' actions were discriminatory in any way. It is clear from a review of the record that Plaintiffs have not yet received the contract in question because the Superior Court of Randolph County has issued a preliminary injunction preventing Defendants from moving forward with the contract. Moreover, the record discloses no evidence suggesting that the preliminary injunction was the result of any conspiracy between the Randolph County Superior Court and any of the Defendants. To the contrary, the preliminary injunction appears reasonable in light of the conflicting claims facing the City.

 Since Plaintiffs have failed to produce sufficient evidence from which a reasonable jury could conclude that Defendants' actions amounted to a violation of Plaintiffs' constitutional rights, Plaintiffs cannot prevail on their § 1983 claim. Ac-

---

**3.** Since the Court finds no constitutional violation in this case, it is unnecessary to address the issue of whether Plaintiffs have produced sufficient evidence to establish the other elements of a § 1983 claim against the City, including evidence of an unconstitutional policy and/or unconstitutional "custom or usage." *See Monell v. Department of Social Services, Id.*

cordingly, summary judgment should be, and is hereby, granted in favor of Defendants on Plaintiffs' § 1983 claim.[4]

### C. Plaintiffs' § 1985 Claim

In Count III of their Complaint, Plaintiffs contend that Defendants have conspired to discriminate against them in violation of § 1983 and § 1985. Having previously concluded that no evidence exists from which a reasonable jury could conclude that Defendants' actions in this case were motivated in any way by discriminatory intent, this Court necessarily finds that Plaintiffs' conspiracy claim must likewise fail.[5]

### PLAINTIFFS' STATE LAW CLAIMS

Having granted summary judgment to Defendants on all of Plaintiffs' federal claims and no independent basis for jurisdictior existing for Plaintiffs' state law claims, the Court declines to exercise pendent or supplemental jurisdiction over those claims. Accordingly, Plaintiffs' state law claims are dismissed without prejudice.

### CONCLUSION

In conclusion, summary judgment is granted in favor of Defendants on each of Plaintiffs' federal law claims (Counts I, II, and III). Additionally, Plaintiffs' state law claims (Counts IV and V) are dismissed without prejudice.

---

4. Plaintiffs have sued Defendants Martin and Sawyer in their official and personal capacities. For purposes of § 1983 liability, claims against government officers and employees in their official capacities are treated as claims against the governmental unit for whom they were employed. *See Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *see also Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). For constitutional deprivation claims against government officials in their personal capacity, "qualified immunity shields a § 1983 defendant ... as long as [his] acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person should have known." *Jackson v. Sauls*, 206 F.3d 1156, 1164 (11th Cir.2000). As previously discussed, Defendants' actions in this case did not violate any of Plaintiffs' constitutional or federal statutory rights. Moreover,

Defendants' compliance with a valid court order and tactical decision to consent to it pending the resolution of the merits of the underlying litigation cannot amount to the violation of a "clearly established federal or constitutional right of which a reasonable person should have known." Therefore, Defendants Martin and Sawyer, insofar as they are sued in their personal capacities, are entitled to the additional protection against liability arising from their qualified immunity in this case.

5. Plaintiffs argue that a conspiracy occurred between the Defendants to deprive Plaintiffs of their constitutional right to be free from racial discrimination; yet Plaintiffs also contend that the City Council had no knowledge that the City consented to the preliminary injunction. Plaintiffs' inconsistent arguments demonstrate the weakness of their case.