[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11386
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-02169-MHH

SHARON D. MARTIN,

                                                            Plaintiff-Appellant,

versus

SHELBY COUNTY BOARD OF EDUCATION,
AUBREY MILLER,
President of the Board of Education in his official and
individual capacity,
PEG HILL, Vice President of the Board of Education in her official
and individual capacity,
JIMMY BICE, Member of the Board of Education in his official and
individual capacity,
JANE HAMPTON, Member of the Board of Education in her official
and individual capacity,
KEVIN MORRIS, Member of the Board of Education in his official and
individual capacity, et al.,

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 27, 2018)

Before MARCUS, WILSON and HULL, Circuit Judges.

PER CURIAM:

Sharon Martin appeals from the district court's grant of summary judgment in favor of the Shelby County Board of Education ("Board") in her race discrimination law suit brought under Title VII and 42 U.S.C. § 1983 against certain Board members in their official and individual capacities. Her complaint alleged that the Board intentionally discriminated against her on the basis of her race when it promoted Karenann George, a less qualified, white candidate, for the position of registrar/data manager at Vincent Middle/High School, instead of her. On appeal, Martin says that the district court erred in granting summary judgment against her because: (1) she rebutted the Board's proffered non-discriminatory reasons for not promoting her, showing them to be pretextual; (2) she properly made out a mixed-motive claim; and (3) she properly sued the Board members in their official and individual capacities. After careful review, we affirm.

We review de novo a summary judgment determination, viewing all evidence in the light most favorable to the non-moving party. Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270 (11th Cir. 2011). The party moving for summary judgment bears the initial burden of establishing the absence of a dispute over a material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party, who may not rest upon mere allegations, but must

2

set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).

First, we are unpersuaded by Martin's argument that the Board's proffered non-discriminatory reasons for not promoting her were pretextual, and, thus, that the district court erred in granting summary judgment on her Title VII claim.  Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race." 42 U.S.C. § 2000e–2(a)(1).  In a failure-to-promote scenario, a plaintiff may establish a prima facie case of discrimination by showing that: (1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not promoted; and (4) the position remained open or was filled by another person outside of her protected class.  Trask v. Sec'y, Dept. of Vet. Affairs, 822 F.3d 1179, 1191 (11th Cir. 2016).  If a prima facie case is presented, the burden shifts to the defendant to articulate a race-neutral basis for the employment action at issue; if the defendant carries this light burden, the burden returns to the plaintiff to prove the defendant's stated reason for its conduct is pretext for discrimination.  See Flowers v. Troup Cty., Ga. Sch. Dist., 803 F.3d 1327, 1336 (11th Cir. 2015).

A plaintiff can show pretext either by offering evidence that the employer more likely than not acted with a discriminatory motive, or that its proffered

reasons are not credible.  Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010).  To do so, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  Id. (quotation omitted).  A plaintiff usually cannot prove pretext merely by showing that she was more qualified than the person hired.  Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1349 (11th Cir. 2007).  "[A] plaintiff must show that the disparities between the successful applicant's and h[er] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  Id.  That's because a court does not "sit as a super-personnel department."  Chapman v. A1 Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (quotation omitted).  To be clear, a reason is not pretext "unless it is shown both that the reason was false, and that discrimination was the real reason."  Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted; emphases in original).

As an alternative to the burden-shifting framework, a plaintiff may show that the evidence, viewed in the light most favorable to her, "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  Smith v. Lockheed Martin Corp., 644 F.3d

4

1321, 1328 (11th Cir. 2011) (footnote omitted).  Either way, if the circumstantial evidence is sufficient to raise a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper.  Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1256 (11th Cir. 2012).  In all cases, a plaintiff retains the ultimate burden of persuading the court that she has been the victim of intentional discrimination.  Flowers, 803 F.3d at 1336.

Here, the district court did not err in holding that Martin had not raised a genuine issue of material fact about pretext.  As the record reveals, the Board provided a race-neutral reason for its decision to hire George, a Caucasian, for the registrar/data manager position instead of Martin -- the interviewers decided that they wanted someone with excellent people skills and a customer service mindset, and the "consensus among the [interviewers] was that Ms. George would have done the best job and was the best choice."  The undisputed record also indicates that the Board asked all the candidates for the position the same questions, made notes of their answers, did not use numerical ratings, and, that the panel members looked favorably on George's prior experience as a substitute in the front office, as well as George's demonstrated organizational skills and ability to multitask.

To establish that the Board's stated reason for its conduct was pretext for discrimination, Martin primarily relies on evidence comparing her qualifications relative to George, the panel's focus on criteria not emphasized in the registrar job

5

description, and the interview panel's decision to scrap a numerical rating system that was provided on the interview forms, and instead to use "a whole comprehensive approach" to score the candidates.  Under the comprehensive approach, the panel discussed each candidate's strengths and weaknesses, any personal knowledge the interviewers had of the candidate, and the overall impression of the candidate after each candidate's interview.

While "[a]n employer's deviation from its own standard procedures may serve as evidence of pretext," Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1299 (11th Cir. 2006), "[i]t is difficult to hold that a practice which affects applicants of all races in the same manner is actually designed to conceal a racially discriminatory motive," Brown v. American Honda Motor Co., 939 F.2d 946, 952 (11th Cir. 1991).  The record shows that the comprehensive approach was used equally on all of the candidates, and that Sandra Gibson, a Caucasian candidate with similar or even superior qualifications to Martin, was equally disadvantaged by the behavior of the Board's interview panel.  Brown, 939 F.2d at 952.  Martin had worked for Vincent Middle/High School around 16 years, had extensive data entry experience, and was very familiar with the INOW software used by the registrar; similarly, Gibson also had worked at the school for 16 years, had extensive data entry skills and was familiar with the INOW software. Nevertheless, none of the panelists ranked either Gibson or Martin in their top two.

6

Further, the interview panel's decision not to consider whether the candidates provided answers during the interview similar to the suggested answers also affected Gibson in the same way that it affected Martin.  Because applicants of all races -- and specifically both a white and black candidate -- were affected in the same manner by the panel's choices during the interview process, we cannot say that this evidence creates a genuine issue of fact about whether the panel's process was "actually designed to conceal a racially discriminatory motive."  Id.

Martin claims that the district court misapplied Brown, but we disagree.  In Brown, we determined that a plaintiff had failed to show pretext where the defendant's deviation from its manual affected two white candidates in the exact same way that it affected the plaintiff, who was black.  Id.  We noted that although "Honda's expressed preference for existing dealers did not appear in the manual, Honda did demonstrate that 10 of the last 13 new sites were filled with existing dealers."  Id.  But Brown did not conclude that a practice had to be consistent with unwritten policy if it were to be discounted as evidence of pretext.  We said that adherence to customary practices, even if unwritten, reinforces the notion that an apparent deviation is not discriminatory; we never said, however, that the practice would otherwise be pretextual.  Id.

Nor do the remaining "inconsistencies" that Martin points to support the claim that she created a genuine issue of fact about whether she was discriminated

7

against on the basis of race.  For example, Martin notes that an interview panel member could not remember specific details about George's interview and failed to copy his second choice on an e-mail telling the candidates he was deliberating over whom he should recommend.  While this evidence may suggest that the interviewer made mistakes, it shows little else, and nothing about discriminatory intent; Martin also mischaracterizes some of this evidence.  As for her arguments based on George's lesser qualifications and on the defendant's shifting reason for hiring George -- first, her technical skills, and later, her people skills -- again, those inconsistencies affected Gibson in the same way as Martin.  Id.

Martin adds that an interview panel member expressed concern that Martin might be "intimidating," and, we acknowledge that seemingly benign words may be evidence of discriminatory intent in certain contexts.  See Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006).  However, that interviewer explained that Martin came across as "very monotone and flat," like another candidate who was white. Martin has not given us any evidence suggesting that the "context, inflection, tone of voice, local custom, and historical usage" of the interview's words were not benign, and we cannot say that they were infected with any racial animosity.  Id. As for Martin's testimony that the Board historically has not hired African-Americans in support staff positions in the front office at Vincent Middle High School, this assertion standing alone does not establish that the Board's decision to

8

hire George was racially motivated.  As we've said, while statistics can be helpful in showing pretext, data "without an analytic foundation, are virtually meaningless."  Brown, 939 F.2d at 952.  Martin did not provide evidence about the number of front office support staff vacancies at Vincent Middle High School or the race of the individuals who applied for the positions.

On this record, we simply cannot say that Marin has raised a genuine issue of fact that the Board's proffered reason for not promoting her was both "false, and that discrimination was the real reason."  Brooks, 446 F.3d at 1163 (quotation omitted; emphasis in original).  Accordingly, the district court did not err in concluding that Martin had failed to show a question of discriminatory intent.

We also find no merit to Martin's argument that the district court erred in granting summary judgment against her on her mixed-motive claim.  In order to survive summary judgment on a mixed-motive claim, a plaintiff must show that: (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was a motivating factor for the defendant's adverse employment action.  Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1239 (11th Cir. 2016).  "In other words, the court must determine whether the plaintiff has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that [her protected characteristic] was a motivating factor for [an] adverse employment decision."  Id. (quotation omitted).

9

Here, as we've already explained, none of the circumstantial evidence Martin has presented, taken separately or together, shows by a preponderance that the Board's decision to hire George over Martin was the result of racial bias. Id. Thus, the district court did not err by awarding summary judgment to the Board.

Finally, we find no merit to Martin's claim that she properly sued the Board members in their official and individual capacities. "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (quotation and footnote omitted). The analysis of a disparate treatment claim is the same whether that claim is brought under Title VII, § 1981 or § 1983. Rice–Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 843 n.11 (11th Cir. 2000).

The Equal Protection Clause ensures a right to be free from intentional discrimination based upon race. Williams v. Consolidated City of Jacksonville, 341 F.3d 1261, 1268 (11th Cir. 2003). To establish a § 1983 equal protection race discrimination claim, a plaintiff "must prove discriminatory motive or purpose." Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1507 (11th Cir. 1995). Further, to establish § 1983 liability, a plaintiff must show proof of an affirmative causal connection between a government actor's acts or omissions and the alleged constitutional violation, which may be established by

10

proving that the official was personally involved in the acts that resulted in the constitutional deprivation. Brown v. City of Huntsville, Ala., 608 F.3d 724, 737 (11th Cir. 2010).

When a claim involves an adverse employment action that occurs based on a biased recommendation by a party without decision-making authority, a plaintiff can establish liability under the "cat's paw" theory. See Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331-32 (11th Cir. 1999). Under that theory, if the decision-making party followed the biased recommendation without independently investigating the complaint -- essentially acting as a rubber stamp of the biased recommendation -- then the recommender's discriminatory animus is imputed to the decision-maker. See id.

Once again, as we've held, Martin has not presented evidence creating triable issues of fact with respect to her Title VII claim against the Board. Consequently, the defendants, in their official capacities, were entitled to summary judgment on Martin's § 1983 claim. Rice–Lamar, 232 F.3d at 843 n.11. Further, the Board members were also entitled to summary judgment on Martin's claim in their individual capacities because Martin has not shown discriminatory motive on the part of the Board's individual members in accepting the interview panel's recommendation to hire George. Indeed, the uncontroverted record reflects that the Board was never provided information on the candidates' race at all. Thus,

11

even if Martin had been deprived of a constitutional right, she has not shown that the Board members, in their individual capacities, were personally involved in the acts that resulted in the constitutional deprivation.  <u>City of Huntsville, Ala.</u>, 608 F.3d at 737.  Finally, Martin has not shown that the panel was influenced by racial bias, and there is, therefore, nothing to impute to the Board itself.  <u>Stimpson</u>, 186 F.3d at 1331-32.  Accordingly, we affirm.

    **AFFIRMED**.