Cornelius COOPER, Michael Edwards, Charcella Green, Patricia Harris, Sarah Jean Harris, Irene McCullers, and Carolyn Wilson, Plaintiffs,

v.

SOUTHERN COMPANY, Georgia Power Company, Southern Company Services, Inc., and Southern Company Energy Solutions, Inc., Defendants.

Civil Action No. 1:00–CV–2231–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 31, 2003.

R. Lawrence Ashe, Jr., Nancy E. Rafuse, Susan Elisabeth Himmer, Paul Hastings Janofsky & Walker, Atlanta, GA, for movant.

Michael B. Terry, Joshua F. Thorpe, Steven Rosenwasser, Bondurant Mixson & Elmore, Atlanta, GA, J. Keith Givens, Angela Joy Mason, Cochran Cherry Giv-

ens Smith & Sistrunk, Dothan, AL, Hezekiah Sistrunk, Jr., Cochran Cherry Givens Smith & Sistrunk, Atlanta, GA, Jock Michael Smith, phv, Cochran Cherry Givens & Smith, Tuskegee, AL, Johnnie L. Cochran, Jr., phv, Los Angeles, CA, Johnnie L. Cochran, Jr., phv, The Cochran Firm, Schnieder Kleinick Weitz Damashek, et al, New York City, for plaintiffs.

W. Ray Persons, King & Spalding, Richard Gerakitis, Stephen William Riddell, Charles A. Hawkins, Frederick Cobb Dawkins, Ashley Zeiler Hager, Sheldon W. Snipe, Troutman Sanders, Eric Jon Taylor, Walter Christopher Arbery, Kelly D. Ludwick, Hunton & Williams, Atlanta, GA, for Defendants.

## ORDER

EVANS, District Judge.

This civil matter alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and 42 U.S.C. § 1981 is presently before the court on all Defendants' motion for summary judgment on the individual claims of Plaintiff Patricia Harris. For the reasons set forth below, Defendants' motion is GRANTED.

## I. Facts

The following facts are undisputed unless indicated otherwise. In June 1990, Defendant Georgia Power Company ["GPC"] hired Plaintiff to work on a contract basis as a Secretary III at a starting salary of $22,668.00. On July 1, 1991, after Plaintiff had been working on a contract basis for approximately one year, she was moved to a Senior Secretary position and she became a GPC employee. Between 1993 and 1997, Plaintiff worked for GPC as a Research Analyst in the Competitive Intelligence Department, and subsequently as an Economic Development Analyst in the Economic Research Department.

In or around July 1997, Plaintiff interviewed for a Market Research and Support Analyst position in the Market Research Department of Southern Company Services, Inc. ["SCS"].[1] The interview

---

1. Defendants The Southern Company ["TSC"] and Southern Company Energy Solutions, Inc. ["SCES"] move for summary judgment on the grounds that Plaintiff has never been employed by nor did she ever apply for positions at TSC or SCES. Defendant GPC moves for summary judgment on the ground that Plaintiff's employment with GPC ended prior to time period relevant to this case. Plaintiff has failed to respond to SCES or GPC's motion and is deemed to have abandoned her claims against those entities. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F.Supp.2d 1301, 1329 (N.D.Ga. 2001).

A plaintiff must be an "employee" to bring a Title VII lawsuit. *Llampallas v. Mini–Circuits, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998). An "employee" for Title VII purposes is an "individual[ ] who receive[s] compensation from an employer." *Id.* at 1243. An "employer" is a "person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). The analysis of whether a party is an employer appears to be the same under Title VII and § 1981. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998) (noting that these statutes have the same requirements of proof and use the same analytical framework); *Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 61 n. 2 (D.D.C.1996); *Sargent v. McGrath*, 685 F.Supp. 1087, 1089 (E.D.Wis.1988); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 245 n. 3 (E.D.N.Y.1994). Thus, Plaintiff has standing to sue TSC only if it can be shown that TSC constituted an "employer" from whom Plaintiff received compensation.

It is undisputed that TSC is a holding company which owns the stock of all other Defendants named in the complaint but has no employees. Womack Aff. ¶ 9. Plaintiff asserts that Defendants, including TSC, created SCS as a company-wide human resources department and use SCS's "extensive involvement in personnel policy-making and employee selection processes" to maintain "substantial

panel consisted of Senior Market Research and Support Analysts Harvey Berman, Hoyt Wagner, and Gene McCloud. Plaintiff also interviewed separately with the manager of SCS's Marketing Research Department, Charles Plunkett. Defendants contend that the interview panel recommended against hiring Plaintiff based on her interviews and her lack of marketing experience or education. According to Defendants, Plunkett went against this recommendation and offered Plaintiff a Market Research and Support Analyst I position even though, given her limited work experience and her lack of any relevant educational background, he believed that she was only minimally qualified for the position.

Defendants contend that Plaintiff, as the most junior Market Research and Support Analyst, was responsible for completing projects and other tasks assigned by Plunkett and the employees holding the Market Research and Support Analyst Senior positions. Plaintiff attended several courses and seminars related to her duties as a Market Research and Support Analyst I. In fact, Plaintiff took more training courses than any other employee in the Department.

During her tenure, Plunkett awarded Plaintiff some of the highest percentage salary raises in the Department. In March of 1998, eight months after her promotion, Plunkett awarded Plaintiff a 4.2% merit raise and her base salary increased to $44,386.56. In March of 1999, Plunkett awarded Plaintiff a 4.9% merit raise and her base salary increased to $46,594.56. Plunkett also awarded Plaintiff a 15% incentive bonus, which was the highest percentage incentive bonus in the Department. Beginning with her pro-

motion, Plunkett had increased Plaintiff's salary by more than 18%.

On August 13, 1999, Plaintiff resigned her employment and sent an unsolicited email to her co-workers which stated, in part:

> After nearly 10 years, my last day with the Southern Company will be Friday, August 13, 1999. I look back and I am in awe of how God has placed the most wonderful people and opportunities in front of me and placed them within one company—the Southern Company. I am definitely "the better for it" for having experienced the Southern Style.... Thank you for the opportunities.

Pla. Dep. Ex. 38. Plaintiff also sent a resignation letter to Plunkett which stated, in part:

> I have had the opportunity to work within the Southern Company system since 1990. My experience at Southern has enriched me deeply.... I am grateful for the positive experiences and relationships developed over the years at Southern.

Plaintiff Dep. Ex. 39. Plaintiff admits she meant what she stated in this letter.

On or about January 4, 1999, Plunkett hired John Dennis Page as a Market Research and Support Analyst II. In or around November 8, 1999, Plunkett hired Darin Klein as a Market Research and Support Analyst I. Plunkett hired Rebekah Golden as a Market Research and Support Analyst I at approximately the same time as Klein, and she began working as an SCS employee on or about November 1, 1999.

This lawsuit was filed on July 27, 2000; Plaintiff joined as a named party when the

---

involvement in GPC's personnel decisions." Plaintiff fails to point to any facts in the record to support these allegations. *See Wood v. Southern Bell Telephone and Tele-* *graph Co.*, 725 F.Supp. 1244, 1249–50 (N.D.Ga.1989). Accordingly, Defendants' motion for summary judgment is GRANTED with respect to TSC, SCES and GPC.

Second Amended Complaint was filed on August 14, 2000. In the complaint, Plaintiff alleges that Defendants discriminated against her by paying her less than her white co-workers and by denying her promotions. Plaintiff also claims that Defendants discriminated against her by denying her training opportunities and support.

## II. *Defendants' Motion for Summary Judgment*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Defendant] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail in their motion for summary judgment, Defendants must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on Defendants' motion, the court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If Defendants make a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

Under Title VII, an employer may be found liable for unlawful discrimination under any one of three discrete theories: disparate treatment discrimination, pattern and practice discrimination, or disparate impact discrimination. *EEOC v. Joe's Stone Crab*, 220 F.3d 1263,1273 (11th Cir. 2000).[2] The first two theories require

proof of discriminatory intent, while the third does not. *Id.* at 1273. Defendants argue that summary judgment is appropriate here because Plaintiff has failed to establish a claim of intentional discrimination or disparate impact. Plaintiff objects, arguing that there are genuine issues of material fact precluding summary judgment as to both Plaintiff's intentional discrimination and disparate impact claims. Because the theories place different burdens on the parties, the Court will address them separately.

### A. *Intentional Discrimination*

To establish a prima facie case of race discrimination under a disparate treatment theory, Plaintiff may offer either direct or circumstantial evidence of discriminatory intent. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (11th Cir. 2000). If the plaintiff presents direct evidence of discrimination, the defendant is then required to prove by a preponderance of the evidence that it would have taken the adverse employment action even in the absence of discrimination.

If the plaintiff provides sufficient circumstantial evidence to support a prima facie case, a legal presumption of unlawful discrimination arises and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. The defendant's burden is "exceedingly light" and is "one of production, not proof." *Id.* at 802, 93 S.Ct. 1817. If the defendant satisfies its burden, the presumption of discrimination is eliminated and the plaintiff must be given an opportu-

---

**2.** Section 1981 provides a cause of action only for claims of intentional discrimination. *See Washington v. Davis,* 426 U.S. 229, 239,

96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir.1999).

nity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant is a pretext for discrimination. *Id.*

A plaintiff may also use statistical evidence to establish either a prima facie case of discrimination or pretext. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 952 (11th Cir.1991). Statistics may be used to establish an individual plaintiff's claim that a pattern or practice of discrimination existed, or simply to bolster the plaintiff's circumstantial evidence of individual disparate treatment. Under the pattern and practice theory, the plaintiff must provide evidence sufficient to establish that impermissible discrimination was the employer's "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274–75, 1286–87 (internal quotation marks and citation omitted). Even if the statistical evidence is insufficient to meet this standard, evidence establishing a discriminatory pattern "is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue." *Parker v. Burnley,* 693 F.Supp. 1138, 1153 (N.D.Ga.1988) (internal quotation marks and citation omitted). Whether the plaintiff argues that the statistical evidence supports a pattern or practice claim or simply constitutes evidence of disparate treatment, "[t]he ultimate inquiry remains whether the plaintiff has demonstrated that the defendant *intentionally* discriminated in refusing to enter into a contractual relationship." *Brown,* 939 F.2d at 952 (11th Cir.1991) (citing *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir. 1987)).

### 1. *Individual Disparate Treatment*

#### *Promotion Discrimination*

■ In the complaint, Plaintiff alleges that Defendants discriminated against her by refusing to promote her. Defendants argue in the motion for summary judgment that Plaintiff abandoned this claim after the close of discovery but fail to indicate specifically how or when this alleged abandonment occurred. While it is therefore unclear that Plaintiff in fact abandoned this claim prior to Defendants' motion for summary judgment, Plaintiff did not make any claims with respect to promotion discrimination in her response to Defendants' summary judgment motion. Defendants are therefore entitled to summary judgment on this claim. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001). Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's promotion claim.

#### *Discrimination in Training and Support*

Plaintiff also alleges in the complaint that Defendants discriminated against her by denying her request to participate in a specific training course. Defendants argue that they are entitled to summary judgment because Plaintiff has failed to establish a prima facie case of disparate treatment. Plaintiff did not address this argument in her response to Defendants' motion for summary judgment. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claim of discrimination in training and support. *Resolution Trust Corp.,* 43 F.3d at 599; *Hudson,* 209 F.Supp.2d at 1329.

#### *Compensation Discrimination*

■ Plaintiff claims that Defendants discriminated against her by paying her less than similarly situated white employees. To make out a prima facie case of compensation discrimination, Plaintiff must establish the following four elements:

1) that she is a member of a protected class; 2) that she received low wages; 3) that similarly situated persons outside the protected class received higher wages; and 4) that she was qualified to receive the higher wages. *MacPherson v. University of Montevallo,* 922 F.2d 766, 774 (11th Cir.1991) (applying the test in an age discrimination case). Defendants do not dispute that Plaintiff is a member of a protected class or that she received low wages but argue that they are entitled to summary judgment on this claim because Plaintiff has failed to establish that she was similarly situated to any of her white co-workers who received higher pay or that she was qualified to receive such higher pay.

"In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him." *Id.* Plaintiff indicated in a discovery response that she is similarly situated to several white co-workers who held the Market Research and Support Analyst I position and were paid more than she: Tracey Helmick, Kathryn Albus, Diane Cunningham, Wilbur Blackman, Jr., Darin W. Klein, Rebekah Golden, and John Page.[3] Defendants argue that none of these employees are proper comparators.

In her response to Defendants' motion for summary judgment, Plaintiff does not dispute that Helmick and Albus are not proper comparators. Nor are Cunning-

ham and Blackman proper comparators. Although Cunningham and Blackman, like Plaintiff, occupy the Market Research and Support Analyst I position, Cunningham and Blackman work in the Load Research Department while Plaintiff works in the Market Research Department. Defendants have provided evidence to establish that the skills and responsibility required of analysts in the Load Research Department varies considerably from those required in the Marketing Research Department. While Plaintiff contends that Cunningham and Blackman perform functions similar to hers, she points to no evidence to support this argument.

Klein, Golden and Page, however, all occupy the Market Research and Support Analyst I position in the Marketing Research Department with Plaintiff. While Defendants have produced evidence to suggest that Klein performed some tasks that the other analysts did not, this evidence is insufficient to establish that the other analysts were performing jobs which require skills, efforts and responsibility that were not substantially equal to Plaintiff's. It is undisputed that Klein, Golden and Page earned more than Plaintiff during the period in question. Thus, Plaintiff has established that similarly situated persons outside the protected class received higher wages.

Defendants next argue that Plaintiff was not qualified to receive the higher wage because she did not have the professional experience or formal education possessed

---

**3.** In her response to Defendants' motion for summary judgment, Plaintiff argues that she can also establish compensation discrimination using the Market Research and Support Analyst Seniors as comparators. Plaintiff contends that she was hired to fill a Senior level position but that Defendants discriminated against her by placing her in a Level I rather than Senior position. Plaintiff's supervisor Plunkett testified that he placed Plaintiff

in the Level I position based on her relative skills and education. Plaintiff does not dispute that she did not negotiate for a higher base salary and accepted Defendants' initial offer for the new position. Plaintiff has provided no evidence to establish that she was performing the same functions as the analysts at the Senior level and thus cannot establish that the Senior analysts are proper comparators.

by Klein, Golden and Page. Plaintiff, who has a masters degree in business administration from the Keller School of Management at the DeVry Institute, began working as a Market Research and Support Analyst I in 1997. Although Defendants contend that Plaintiff had little or no marketing experience at that time, Plaintiff has provided evidence to support her contention that she gained marketing experience in the positions held at GPC from 1993 through 1997. Plaintiff received positive evaluations during the period in question and her performance was frequently praised; such evidence indicates that Plaintiff performed her job well and thus was at least arguably qualified to receive wages comparable to those received by the other analysts.

However, that Plaintiff did not have the same professional experience or education as the other analysts provides Defendants' legitimate, non-discriminatory reason for Plaintiff's lower wages. When Plaintiff accepted the Market Research and Support Analyst I position, Plunkett offered Plaintiff a salary of $42,586.56, which was an 8% increase over her prior salary of $39,432.00. Defendants contend that Plunkett believed that this salary was appropriate based on Plaintiff's work history and educational background. Plaintiff neither sought to negotiate for a higher salary nor offered any justification why she should receive a higher salary.

In contrast, Defendants' evidence shows that Klein earned bachelor, masters and doctorate degrees from the University of Pennsylvania and that he had specialized in communications and research. Klein taught for over ten years at the University of Pennsylvania and at Georgia State University and had performed market research functions for a local advertising agency. Golden has a bachelor's degree and more than six years of experience in market research, holding such positions as

Project Director of Marketing, Supervisor of Marketing Research, and Marketing Research Coordinator for Cox Communications. Page has a bachelor's degree in business and marketing from Winthrop University and a master's degree in marketing research from the University of Georgia. Page also worked for six months as a Market Research Management intern with Bellsouth Communications.

Plaintiff attempts to establish pretext by arguing that alleged variations in professional experience and education do not justify her lower salary. The proper pretext analysis is whether Plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997). Plaintiff first asserts that Klein's experience and education do not justify his higher salary because his work experience was primarily academic. Plaintiff then argues that Golden's higher salary is not justified because Golden had only a bachelor's degree while Plaintiff holds a master's degree. With respect to Page, Plaintiff argues that his education and professional experience do not justify his higher salary because Page, a recent graduate, had never held a full-time marketing position. Plaintiff also argues with respect to all three comparators that because she and they were placed in the same position within the same departments, the variations in experience and education are not significant enough to justify her lower salary.

However, Plaintiff's own opinion about these differences in qualifications does not give rise to a material fact dispute. Plaintiff has provided no evidence to establish that Defendants did not actually value the

education and professional experiences of the other analysts more than Plaintiff's. Plaintiff cannot establish pretext merely by suggesting that, in her judgment, the other analysts were not as qualified as she. *Id.* at 1523 (noting that a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons where the reason is one that might motivate a reasonable employer).

Plaintiff asserts that pretext is also established by the testimony of other black employees in the Department that they were discriminated against by Defendants. Specifically, Plaintiff offers the sworn statements of two black employees who claim that Defendants denied them advancement opportunities and compensation comparable to that received by white employees. These statements contain conclusory, generalized allegations with few specific facts and Plaintiff provides no documentation to support the few facts alleged. These affidavits are simply insufficient by themselves to allow a reasonable factfinder to determine that Defendants' legitimate reason for *Plaintiff's* compensation is actually a pretext for discrimination. *See id.* at 1528.

Plaintiff has also provided statistical evidence of racial imbalances in Defendants' compensation practices as evidence of pretext. Specifically, Plaintiff has offered statistical reports to support her claim that Defendants' compensation practices had a discriminatory effect on black employees. Plaintiff argues that the reports of her expert, Dr. Madden, which find statistically significant disparities in the compensation of black employees relative to white employees, are evidence from which a reasonable factfinder could determine that intentional discrimination occurred. Defendants contend that Plaintiff's generalized statistics are insufficient to support Plaintiff's claims of intentional discrimination.

As the Supreme Court has noted, while statistical evidence may allow the District Court to "determine ... that the (racial) composition of defendant's labor force is itself reflective of restrictive or exclusionary practices .... such general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to hire." *McDonnell Douglas,* 411 U.S. at 805 n. 19, 93 S.Ct. 1817 (internal quotation marks and citation omitted). In this case, Plaintiff's statistical evidence is insufficiently specific to support her individual claims.

Plaintiff's statistics compare the compensation rate of employees within the same pay grade who perform similar job functions; however, these statistics generally fail to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to compensation decisions. Plaintiff does not provide statistics comparing employees with equivalent work experience in specific job categories or job progressions. Plaintiff relies instead on a statistical analysis of a company-wide data pool and makes no attempt to narrow the data pool to the locations or specific position in which she worked. As this Court noted in the order denying class certification, the probative value of Plaintiff's statistical evidence is therefore highly questionable, in significant part due to the treatment of factors such as experience, education and specific promotion processes. *Cooper v. Southern Company,* 205 F.R.D. 596, 613–14 (N.D.Ga.2001).

The analytical deficiencies of Plaintiff's statistics diminish the probative value of

this evidence such that it cannot by itself support a claim of disparate treatment. *See Brown v. American Honda Co.*, 939 F.2d 946, 952 (11th Cir.1991) (holding that summary judgment was appropriate where plaintiff's statistical evidence, which lacked specific analytical foundation and thus failed to show that employer maintained discriminatory intent, was insufficient to establish prima facie case or pretext); *Hawkins v. Ceco Corp.*, 883 F.2d 977, 985 (11th Cir.1989) (holding that plaintiff's statistical evidence failed to establish prima facie case or pretext where evidence failed to make specific analytical comparisons); *cf. James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 330 (5th Cir.1977)[4] (holding that plaintiff's evidence of statistical disparities in hiring, promotion and compensation was sufficient to support claim of intentional discrimination where the employment decisions were based on *completely* subjective criteria).

Because Plaintiff has failed to provide any evidence of pretext, Defendants are entitled to summary judgment on Plaintiff's compensation claim. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's compensation claim.

### 2. *Pattern and Practice*

 Plaintiff has failed to create a genuine issue of material fact as to whether a pattern or practice of discrimination existed. As discussed above, Plaintiff has provided statistical evidence in an attempt to establish a claim of pattern and practice discrimination. While "statistics as to [Defendants'] employment policy and practice may be helpful to a determination of whether [Defendants'] [employment decision] in this case conformed to a general pattern of discrimination against blacks," *McDonnell Douglas*, 411 U.S. at 805, 93

S.Ct. 1817, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re Employment Discrimination Litig. Against State of Ala.*, 198 F.3d 1305, 1312 (11th Cir.1999). The analytical deficiencies of Plaintiff's statistical evidence, discussed above, render this evidence insufficient to support a pattern or practice claim.

 In addition to Plaintiff's expert reports, Plaintiff offers Defendants' internal personnel documents to support her argument that Defendants maintained a pattern or practice of compensation discrimination. While these documents indicate some disparity in compensation between black and white employees, these documents are not probative as to whether Defendants intentionally discriminated against Plaintiff during the period in question. The documents indicate average salaries of employees divided by racial classification but do not control for factors such as education, experience or skill level and thus cannot prove that Defendants discriminated on the basis of race. Plaintiff has thus failed to come forward with evidence sufficient to prove that intentional discrimination was Defendants' "standard operating procedure." *Joe's Stone Crab*, 220 F.3d at 1274–75 Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's pattern and practice claim is GRANTED.

### B. *Disparate Impact*

Finally, Defendants argue that Plaintiff has failed to establish a claim of disparate impact under Title VII. Because 42 U.S.C. § 1981 provides a cause of action only for

---

**4.** This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

claims of intentional discrimination, disparate impact claims must be brought under Title VII. This Court has already determined that Plaintiff does not have standing to pursue claims under Title VII in this case under the applicable statute of limitations. *Cooper*, 205 F.R.D. at 606. Plaintiff does not address her disparate impact claim in her response to Defendants' motion for summary judgment. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's disparate impact claim.

For the reasons stated above, Defendants' motion for summary judgment on Plaintiff's individual claims [# 199] is GRANTED.